IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| THOMAS J. HALL, | ) |
| Plaintiff, | ) Civil Action No. 7:04CV00285 |
| v. | ) **MEMORANDUM OPINION** |
| STANDARD INSURANCE CO., | ) By: Hon. Glen E. Conrad |
| | ) United States District Judge |
| Defendant. | ) |

This case is again before the court on defendant's motion to dismiss. For the reasons set forth below, the court will grant the motion to dismiss.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Thomas J. Hall ("Hall") was an income partner with Woods, Rogers & Hazlegrove, PLC ("Woods Rogers") and a participant in the long term disability policy offered by Woods Rogers to all equity and income partners as well as employees of the firm. After falling ill during a vacation in December 2000, Hall became unable to work because he could not speak without coughing. After initially awarding Hall disability benefits, Standard Insurance Company ("Standard"), the company which sold the long term disability policy, cut off Hall's benefits after a twenty-four month period, alleging that his illness was psychological in nature. Hall has contested this determination, as well as the onset date determined by Standard and the monthly benefit amount.

On June 4, 2004, Hall filed a complaint against Standard alleging a state breach of contract claim as well as a state claim for attorney's fees. In the alternative, Hall also made a claim for benefits under the plan and for attorney's fees under the Employee Retirement Income

Security Act of 1974 ("ERISA"). On October 5, 2004, Standard filed its motion to dismiss claiming that all of Hall's claims based upon state law are preempted by ERISA. On November 17, 2004, Standard filed a motion for protective order requesting the court to limit discovery to the administrative record it would produce in the litigation.

After holding a hearing on the motions, this court issued a Memorandum Opinion and Order on February 10, 2005 in which the court granted the motion for protective order except that it permitted Hall to obtain certain limited discovery with regard to defendant's motion to dismiss. The court also took the motion to dismiss under advisement pending the parties' review of any additional evidence obtained from this limited discovery and the submission of the parties' supplemental briefs to the court. During a hearing on June 3, 2005, counsel for Hall asked for additional time to attempt to establish that the plan was different from that described in exhibits already submitted to the court. The court agreed to provide Hall with limited additional time for this purpose. The parties have submitted their supplemental briefs on the motion to dismiss, which is now ripe for decision.

## STANDARD OF REVIEW

This motion was originally filed as a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). In this case, however, both parties have filed exhibits which constitute matters outside the pleadings. Therefore, the court will treat the motion as one for summary judgment under Federal Rule of Civil Procedure 56. Fed. R. Civ. P. 12. The court need not provide notice to the parties of such treatment because the parties have actual notice of the conversion by operation of the Rule and their own submission of such exhibits. See Laughlin v. Metropolitan Washington Airports Auth., 149 F.3d 253, 261 (4th Cir. 1998). Furthermore, the

2

court has provided both parties with ample opportunity for discovery.

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is properly granted if "there is no genuine issue as to any material fact and the . . . moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). For a party's evidence to raise a genuine issue of material fact to avoid summary judgment, it must be "such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, the court must view the record in the light most favorable to the non-moving party. Terry's Floor Fashions, Inc. v. Burlington Industries, Inc., 763 F.2d 604, 610 (4th Cir. 1985).

## **DISCUSSION**

Standard bases its motion to dismiss upon its contention that, because the long term disability plan at issue is an employee welfare benefit plan governed by ERISA, all of Hall's state claims are preempted by ERISA. The Fourth Circuit has held that the following elements must be present for a plan to be considered an employee welfare benefit plan under ERISA: (1) a plan, fund or program (2) established or maintained (3) by an employer (4) for the purpose of providing medical, surgical, hospital care, sickness, or disability benefits (5) to participants or their beneficiaries. Madonia v. Blue Cross & Blue Shield of Virginia, 11 F.3d 444, 446 (4th Cir. 1993). When a plan is considered to be an employee welfare benefit plan under ERISA, state laws including common law causes of action, such as breach of contract, are preempted by the relevant provisions of ERISA. See Makar v. Health Care Corp. Of the Mid-Atlantic, 872 F.2d 80 (4th Cir. 1989).

Hall does not dispute that the long term disability plan here is an employee welfare

3

benefit plan, nor does he dispute the general principle of ERISA preemption of state law causes of action. Instead, Hall contends that the plan at issue here may fall under the safe harbor regulation which provides that:

> the terms "employee welfare benefit plan" and "welfare plan" shall not include a group or group-type insurance program offered by an insurer to employees or members of an employee organization, under which:
> (1) No contributions are made by an employer or employee organization;
> (2) Participation [in] the program is completely voluntary for employees or members;
> (3) The sole functions of the employer or employee organization with respect to the program are, *without endorsing the program*, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and
> (4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. § 2510.3-1(j) (emphasis added). When a plan meets these four criteria, it is deemed not to have been established and maintained by the employer, thus it would not meet the requirements of an employee welfare benefit plan.

Hall argues that he voluntarily entered the plan and paid the full amount of premiums personally. He further contends that, as to him and other income or equity principals, Woods Rogers merely advised him of the availability of group insurance, accepted payroll deductions, passed those on to the insurer, and performed, at most, other ministerial tasks that assisted the insurer in publicizing the program. Thus, Hall concludes the plan falls within the safe harbor exception and his state law claims are not preempted by ERISA. See Kerr v. United Teacher Assocs. Ins. Co., 313 F. Supp. 2d 617 (S.D. W. Va. 2004) (concluding that the plan at issue was not an employee benefit plan because the defendant failed to show that the employer had any more involvement in the plan than allowing one of several companies to publicize its insurance

4

to employees and taking payroll deductions).

Standard responds that the Summary Plan Description states that the plan *is* an employee benefit plan covered by ERISA and identifies Woods Rogers as the plan sponsor. The Summary Plan Description also includes a section entitled "ERISA Information and Notice of Your Rights," which describes the rights available under ERISA. The Policy sets forth certain rights and responsibilities of Woods Rogers, who is named the plan sponsor and administrator, as follows: (1) to determine the amount of each member's contribution to the cost of insurance under the Policy; (2) to change premium rates upon mutual agreement with Standard; (3) to terminate the Policy upon written notice; (4) to distribute to each insured member the certificates issued by Standard; and (5) to furnish all information necessary to Standard.

Furthermore, Woods Rogers selected the insurance carrier and applied for the insurance. Generally, to remain neutral for purposes of the safe harbor regulation, an employer must "refrain from *any* function other than permitting the insurer to publicize the program and collect[] premiums." Butero v. Royal Maccabees Life Ins. Co., 174 F.3d 1207, 1213 (11th Cir. 1999) (emphasis in original). In Butero, the Court held that the employer had endorsed the plan by picking the insurer, deciding on key terms, determining employee eligibility, and incorporating policy terms into its own summary plan description for its cafeteria plan. Id. at 1213-14.

Woods Rogers also submitted amendments to the policy. Woods Rogers's Director of Human Resources wrote a letter to Standard on December 2, 1998 requesting an amendment to the policy to revise the definition of principal to include non-equity principals. Another Woods Rogers representative requested additional policy amendments in 2000. Therefore, Standard contends that Woods Rogers compromised its own neutrality through its active involvement in

5

and endorsement of the long term disability plan. Thus, Woods Rogers endorsed the plan for purposes of the regulation and the safe harbor would not be available.

In response, Hall first contends that he was a partner, not an employee, of Woods Rogers and that the claim of a law firm partner to benefits may be outside the scope of ERISA. Hall cites Couch on Insurance § 7:18 What Employee Benefit Plans are Covered, Generally (May 2004) which states that "if a plan involves non-employees as participants, the plan is not an ERISA plan as to those participants." (citing Madden v. Country Life Ins. Co., 835 F. Supp. 1081 (N.D. Ill. 1993)). In Madden, supra, the plaintiff was one of two partners in a law firm with one employee. The Court held that the plaintiff was neither a participant nor a beneficiary in the firm's group health plan because a partner, like an owner of a business, "cannot possess the dual status of both employer and employee in order to avail himself of ERISA's remedies." Id. at 1085. Thus, the plan was simply an insurance policy with regard to the partner, and his state law claims were not preempted by ERISA. Id. at 1087.

The court notes, however, that the authorities upon which the Madden court relied have been abrogated by the Supreme Court decision in Yates v. Hendon, 541 U.S. 1 (2004). In Yates, the Court held that a working owner of a business, such as the sole shareholder and president of a corporation, did qualify as a participant in an ERISA pension plan as long as the plan covers at least one employee other than the working owner and his spouse. Yates, 541 U.S. at 6. A court from the same jurisdiction as the Madden court has recognized the change and applied this holding to law firm partners. Daniels v. Bursey, 313 F. Supp. 2d 790, 809 (N.D. Ill. 2004).

Hall attempts to distinguish Yates by noting that the Supreme Court in that case based its opinion in part upon its desire to harmonize ERISA with longstanding provisions in the Internal

6

Revenue Code with regard to participation in tax-qualified pension plans, the type of plan at issue there. Yates, 541 U.S. at 12. Hall argues that no such tax issues exist with regard to long-term disability plans, such as the one here, therefore the holding in Yates should not apply to his case. Hall's argument is without merit. The Court in Yates also cited the need for national uniformity and noted that "[e]xcepting working owners from the federal Act's coverage would generate administrative difficulties and is hardly consistent with a national uniformity goal." Id. at 17. The Court also noted that:

> Recognizing the working owner as an ERISA-sheltered plan participant also avoids the anomaly that the same plan will be controlled by discrete regimes: federal-law governance for the nonowner employees; state-law governance for the working owner.

Id. Finally, the Court's broad holding was that working owners, "in common with other employees, qualif[y] for the protections ERISA affords plan participants and [are] governed by the rights and remedies ERISA specifies." Id. at 6. Hall's narrow interpretation of Yates is precluded both by the broad language of the opinion and the Court's stated policy interest in achieving uniformity. Therefore, the court holds that Hall, as a law firm principal, did generally qualify as an ERISA plan participant in the long-term disability plan.

Hall continues to attempt to distinguish his participation in the plan as a principal from that of an employee. Hall notes that income and equity principals were required to pay the entire cost of the premiums out of their own pocket and that they could not claim those payments as deductions for tax purposes. Thus, when principals received benefits under the policy, as Hall did, they were not required to pay income taxes on those benefits. Employees, on the other hand, would pay income taxes on any benefits received under the plan because Woods Rogers directly pays the amount of their premiums and deducts that amount as a business expense. Hall

7

concludes that while employees are third party beneficiaries of the insurance policy between Woods Rogers and Standard, he, as a principal, had a direct contractual relationship with Standard. Hall further concludes that, as to its principals, Woods Rogers simply assisted in the arrangement of long term disability coverage.

Hall also maintains that, unlike employees, principals do not have the ability to appeal claim denials to the Plan Administrator at Woods Rogers. Hall has provided the court with the Plan Document and Summary Plan Description for Woods, Rogers & Hazlegrove, P.L.C., Welfare Benefit Plan, January 1, 2001 which states that the Plan Administrator has the duty to review claim denials. Hall asserts that this document is the Plan Document. When Hall attempted to follow this procedure, the firm informed him that it declined to take any action on his behalf. Thus, he concludes that this is a further example of the different application of the plan to principals, which supports his assertion that Woods Rogers did not establish and maintain the plan as to principals, such as himself.

As Standard notes, however, this document also states that "if there is any conflict between an insurance contract and either the Plan Document or this SPD, the insurance contract will control." In addition, the document itself states that, with regard to the long term disability program, the details of such coverage are included in the separate booklet provided by the insurer. Thus, any claims review procedures outlined in the Woods Rogers plan document would not necessarily be applicable to the long term disability program, which is controlled by other documents such as the summary plan description and policy provided by Standard. That policy sets out a specific review procedure.

The court finds that none of these distinctions are sufficient to remove Hall's status as an

ERISA plan beneficiary. While Hall may have had different tax treatment than Woods Rogers employees, the holding in <u>Yates</u> dictates that owners, including law firm principals, are treated in a similar manner to non-owner employees with regard to ERISA participation. Furthermore, Woods Rogers selected the insurance carrier and provided a summary plan description to all participants, including both income and equity principals and employees, that described the plan as an ERISA plan. Woods Rogers representatives requested amendments to the policy language, and Woods Rogers had the right to determine contributions, to change premium rates with Standard's agreement and to terminate the plan with regard to both principals and employees. Thus, the court concludes that Woods Rogers has endorsed the plan and failed to maintain sufficient neutrality to permit invocation of the safe harbor provision. As a result, Hall's state causes of action are preempted by ERISA and must be dismissed.

## CONCLUSION

For the foregoing reasons, the defendant's motion will be granted, and Count I of Hall's Complaint and each of Hall's state law claims will be dismissed with prejudice. Consideration of plaintiff's ERISA claim shall proceed in accordance with the court's pretrial order.

The Clerk is directed to send certified copies of this Memorandum Opinion and the accompanying Order to all counsel of record.

ENTER:   This 9th day of August, 2005.

_____
United States District Judge

9

Case 7:04-cv-00285-GEC   Document 40   Filed 08/09/05   Page 9 of 9   Pageid#: 428